941 F.2d 1213
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James D. CAMPBELL, Petitioner-Appellant,
v.
G.L. HERMAN, Respondent-Appellee.
 Nos. 91-3090, 91-3092.
 United States Court of Appeals, Tenth Circuit.
 Aug. 22, 1991.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate records, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Petitioner-appellant James Campbell appeals two separate district court orders denying his petitions for writ of habeas corpus. On appeal, Campbell argues his first and eighth amendment rights were violated when prison officials restricted his visitation rights for five years based on a positive urinalysis test for drug use. He also argues his fifth amendment procedural due process rights were violated at the disciplinary hearing and he was entitled to a separate hearing when his visitation privileges were revoked. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.
 
 
 3
 Campbell contends he was denied procedural due process in connection with the hearing because he received a "false" notice of the charges, the hearing officer handled the hearing in a biased manner, the incident report upon which the decision was based contained misstatements, he was denied an opportunity to present a key witness, and legal assistance from prison staff was inadequate. In Wolf v. McDonnell, 418 U.S. 539, 564-66 (1974), the Supreme Court held that minimum requirements of procedural due process are satisfied when prison officials provide: (1) written notice of charges at least twenty-four hours before a hearing, (2) a written statement of factfinders about evidence relied upon and reasons for any disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence when doing so will not jeopardize institutional or correctional goals. Inmates do not have a right to retained or appointed counsel in disciplinary proceedings. Id. at 570.
 
 
 4
 Here, the record shows minimal procedural due process requirements were met. Campbell admits he received notice of the charges. The written statement of the hearing officer explained the specific evidence relied on to support a guilty finding included the positive lab report, the urine surveillance report linking the positive test to Campbell, and a memo from the prison pharmacist stating Campbell was not issued any medication that would result in a positive test. The record shows that possible typographical errors in the surveillance report did not affect the credibility of the evidence showing the positive urine sample came from Campbell. Additionally, the record shows Campbell elected to proceed with the hearing despite the absence of a witness, Officer Earl Haling, who was hospitalized. There is no evidence supporting Campbell's assertion the hearing officer conducted the hearing in a biased manner. Further, his claims of ineffective assistance are without merit because minimum due process does not require assistance of counsel in disciplinary hearings.
 
 
 5
 Campbell argues that his visitation privileges cannot be taken away without a separate hearing because prison regulations create a constitutional liberty interest in visitation. We disagree. In Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 461-63 (1989), the Supreme Court explained that state laws or regulations may create enforceable liberty interests in prison privileges. A liberty interest in visitation is created only when regulations contain explicit mandatory language relating to specific limitations on official discretion. Id. at 462-63. Unless visitation regulations contain such mandatory language, no liberty interest has been created. See id.
 
 
 6
 Here, the regulations specifically allow loss of visitation privileges for possession or use of any narcotics or drugs not prescribed by medical staff. In discussing loss of privileges, the regulations state that officials "may direct that an inmate forgo specific privileges for a specified period of time." (Emphasis added.) Beyond this discretionary authority regarding loss of privileges, the regulations and policies included in the record contain no mandatory language limiting prison officials' discretion to restrict visitation privileges. Thus the regulations do not create a liberty interest in visitation. The fact the regulations describe visitation as a "right" does not mean a liberty interest is created when the regulations also provide official discretion to restrict visitation. Further, provisions authorizing restriction of a particular privilege for an abuse of that privilege do not contradict the more general discretionary authority to restrict a privilege for other violations.
 
 
 7
 Campbell contends the penalty he received violates the eighth amendment prohibition against cruel and unusual punishment. A punishment that is grossly disproportionate to an offense may violate the eighth amendment's protection against cruel and unusual punishment. See Rummel v. Estelle, 445 U.S. 263, 271-74 (1980). Here, the record shows Campbell has been found guilty of drug use five times in the past two years. We cannot say that a five year restriction on visitation privileges is grossly disproportionate to Campbell's repeated use and possession of narcotics while in prison custody.
 
 
 8
 Campbell also contends imposition of the visitation penalty violates his first amendment right of association. As the Supreme Court has pointed out, challenges to prison restrictions that allegedly inhibit first amendment rights are analyzed in terms of the legitimate penological objectives of a corrections system to whose custody the prisoner has been committed in accordance with due process of law. Pell v. Procunier, 417 U.S. 817, 822 (1974). Legitimate penological objectives include crime deterrence, punishment, protection, internal security, and rehabilitation. Id. at 822-23. Because a convicted criminal has no absolute constitutional right to visitation, such privileges are subject to the discretion of prison authorities provided that the restriction of visitation privileges meets some legitimate penological objective. Evans v. Johnson, 808 F.2d 1427, 1428 (11th Cir.1987).
 
 
 9
 Here, Campbell's visitation privileges were revoked when he tested positive for drug use. The record shows that Campbell had not been prescribed drugs by the prison pharmacist. The hearing officer's report states that lesser penalties restricting visitation privileges had been ineffective to deter Campbell's drug use in prison. Five years' loss of visitation privileges, the report states, is designed to serve the purposes of punishment and deterrence. Since the penalty serves legitimate penological goals, we cannot say the defendant abused his discretion.
 
 
 10
 Because the petitioner has advanced a reasoned argument on the law and facts in support of the issues raised on appeal, see Coppedge v. United States, 369 U.S. 438 (1962), we GRANT in forma pauperis and AFFIRM. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3